UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID C. JONES,
and TRACY LEE JONES,

                 Plaintiffs,                          Case No. 13-cv-12092

v                                          Honorable Thomas L. Ludington

COLONIAL SAVINGS F.A., and COLONIAL
NATIONAL MORTGAGE, a Division of Colonial
Savings F.A., and, MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.

                 Defendants.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING
PLAINTIFFS' OBJECTIONS, AND GRANTING DEFENDANTS' MOTION TO
DISMISS**

On March 18, 2013, Plaintiffs David and Tracey Lee Jones filed suit against their

mortgagees, MERS and Colonial Savings, asserting claims for (1) tortious interference with

contract; (2) tortious interference with business relationship; (3) fraud based on false

representation; (4) fraud based on concealment; (5) unfair, unconscionable, or deceptive methods

under the Michigan Consumer Protection Act; (6) intentional infliction of emotional distress; and

(7) negligence. Defendants removed the case from the Cheboygan County Circuit Court on May

10, 2013. ECF No. 1.

On May 15, 2013, Defendants filed a motion to dismiss for failure to state a claim upon

which relief may be based pursuant to Rule 12(b)(6) and for failure to allege fraud with

particularity as required by Rule 9(b). On August 7, 2013, United States Magistrate Judge Binder

recommended that Defendants' motion to dismiss be granted, and the Jones filed timely

objections. Because all of the Jones' allegations arise out of contract law, they cannot maintain any of their tort claims. Therefore, Judge Binder's report will be adopted, the Jones' objections will be overruled, and Defendants' motion to dismiss will be granted.

## I

This litigation arises out of Defendants' two foreclosures on the Jones' property. The Jones argue that Defendants' first foreclosure was voided by a Michigan Court of Appeals decision. Pursuant to that decision, the Defendants expunged the first foreclosure and then foreclosed on the Jones' property a second time. Although the Michigan Supreme Court subsequently reversed the Michigan Court of Appeals, the Jones claim that all of Defendants' actions taken between the time of the first foreclosure and the second foreclosure were tortious under Michigan law.

## A

On January 2, 2007, Plaintiffs David and Tracey Lee Jones granted a senior mortgage to Defendant Colonial Mortgage on their property located at 1525 Shawnee Avenue in Indian River, Michigan. Compl. ¶ 7. The senior mortgage was in the amount of $146,250. *Id.* The Jones also granted a second mortgage in the amount of $29,250 to Colonial Mortgage with Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee. *Id.* After the Jones purchased the property, they used it as investment and vacation property. Def.'s Mot. to Dismiss 10. The Jones also rented the property out to tenants. *Id.* ¶ 11.

In November 2009, the Jones did not pay the mortgage payments required on the senior mortgage loan. Def.'s Mot. to Dismiss 10. Colonial Savings forwarded the foreclosure referral to a law firm which sent the Jones a Fair Debt Collections letter to alert them of the default and to

advise them that they had thirty days to dispute the debt. *Id.* The Jones never disputed the debt nor did they attempt to bring the debt current. *Id.*

On March 19, 2010, MERS conducted a Sheriff's Sale of the property pursuant to MCL 600.3101. Compl. ¶ 9. MERS purchased the property at the foreclosure sale for $139,900 and recorded the deed in the Cheboygan County Record's Office. *Id*. MERS then deeded its interest to Colonial Savings. Def.'s Mot. to Dismiss 11. The statutory redemption period expired on September 19, 2010. *Id.*

After acquiring the property from MERS, Colonial Savings took possession of the property and began to prepare it to be resold. Def.'s Mot. to Dismiss 12. Colonial Savings attempted to obtain a seller's title insurance policy so that the property could be conveyed. Def.'s Mot. to Dismiss 12. On December 1, 2013, Colonial Savings paid the tenants a total of $3,500 to move out. Compl. ¶ 12-13. When the tenants moved out, the Jones had to conduct a sale of the contents of the property. *Id*. ¶ 14.

**B**

While Colonial Savings was preparing the property to be sold, the Michigan Court of Appeals issued its decision in *Residential Funding Co., LLC v. Saurman* on April 11, 2011. 807 N.W.2d 412 (Mich. Ct. App. 2011). The Michigan Court of Appeals' decision invalidated foreclosure sales taken in the name of MERS, such as the foreclosure taken on the Jones' property. *Id*. at 424 ("MERS did not own the indebtedness, own an interest in the indebtedness secured by the mortgage, or service the mortgage. MERS' inability to comply with the statutory requirements rendered the foreclosure proceedings . . . void *ab initio*.").

Pursuant to the Michigan Court of Appeals' ruling, the March 19, 2010 Sheriff's Sale of the Jones' property was voided. Because the initial foreclosure by MERS was void, MERS'

subsequent sale to Colonial Savings was also voided. Colonial Savings was therefore unable to obtain a title insurance policy.

Defendants then attempted to re-foreclose on the Jones' property. MERS recorded an Affidavit Expunging Sheriff's Deed on Mortgage Sale on August 10, 2011. Def.'s Mot. to Dismiss Ex. G. Defendants then sent a new Fair Debt Collections letter to the Jones, again warning them that they had thirty days to pay or dispute the mortgage debt. *Id.* Ex. H. Again, the Jones did not respond to the letter. *Id.* 13.

MERS then assigned its interest in the Jones' property to Colonial National Mortgage, who held a Sheriff's Sale on February 3, 2012. Def.'s Mot. to Dismiss 14. The property sold for $95,0000, and the Jones did not redeem the property within the limitations period. *Id*.

C

While Defendants were in the process of re-foreclosing on the Jones' property, the Jones were contacted by Wayne Stahl, who had been hired to sell the Jones' property in 2009. Compl. ¶ 16. In May 2011, Mr. Stahl informed the Jones that MERS' original foreclosure had been invalidated by the Michigan Court of Appeals' April 2011 decision in *Saurman*. *Id*. Mr. Stahl also claimed that "but for the foreclosure, he could have sold the Subject Property to between one and three buyers." *Id*. However, because Colonial Savings had changed the locks to the property when it bought the property after the first foreclosure sale, Mr. Stahl had been unable to show the property to prospective buyers. *Id*.

After locating another potential buyer in June 2011, Mr. Stahl contacted Defendants about accessing the property. Compl. ¶ 17. The Defendants admitted that the original foreclosure had been voided by the Michigan Court of Appeals, but refused to provide Mr. Stahl access to the property. *Id*. ¶ 18.

- 4 -

**D**

About four months after Mr. Stahl requested access to the property in June 2011, the Michigan Supreme Court reversed the Michigan Court of Appeals' holding in *Residential Mortgage v. Saurman*. On November 16, 2011, the Michigan Supreme Court explicitly held that MERS is permitted to hold foreclosures. 805 N.W.2d 183, 183 (Mich. 2011) ("MERS owned a security lien on the properties . . . This interest in the indebtedness—i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness—authorized MERS to foreclose by advertisement under MCL 600.3204(1)(d).).

**E**

The Jones filed suit against Defendants, claiming (1) tortious interference with contract; (2) tortious interference with business relationship; (3) fraud based on false representation; (4) fraud based on concealment; (5) unfair, unconscionable, or deceptive methods under the Michigan Consumer Protection Act; (6) intentional infliction of emotional distress; and (7) negligence. The Jones argue that all of these claims arose out of Defendants actions during the time between the first foreclosure and the second foreclosure of their property.

On May 15, 2013, Defendants filed a motion to dismiss, asserting that the Jones had failed to state a claim for which relief may be granted under Rule 12(b)(6) and failed to allege fraud with particularity as required by Rule 9(b). On August 7, 2013, Magistrate Judge Binder issued a report recommending that Defendants' motion be granted and all the Jones' claims be dismissed.

**II**

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2). If objections are

made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

Here, the Jones raise three objections. First, the Jones dispute Judge Binder's conclusion that their claims all arise under contract law rather than tort law. Next, the Jones argue that Judge Binder did not construe the facts in their favor, as required on a motion to dismiss pursuant to Rule 12(b)(6). Finally, the Jones argue that they have sufficiently stated claims for tortious interference of business relationships and contract.

**A**

The Jones first object to Judge Binder's conclusion that the tort claims—tortious interference with contract, tortious interference with business relationship, false representations, concealment, deceptive methods, intentional infliction of emotional distress, and negligence— should be dismissed because the allegations all arise out of a contractual relationship. Judge Binder concluded that "Plaintiffs' claims all boil down to their argument that Defendants should not have foreclosed on their property . . . ." Rep. & Rec. 7.

In Michigan, tort and contract actions are separate and distinct: "Where the cause of action arises merely from a breach of promise, the action is in contract. The action of tort has for its foundation the negligence of the defendant, and this means more than a mere breach of a promise." *Corl v. Huron Castings, Inc.*, 544 N.W.2d 278, 281 n. 10 (Mich. 1996) (citations and quotations omitted); *see also Kroeger v. AEC Enters. Const., Inc.*, 2009 WL 4981180, at *5 (Mich. Ct. App. Dec. 22, 2009) (plaintiffs must "show a duty 'separate and distinct' from that imposed by contract to give rise to tort liability"). This distinction bars a party from recovering in a tort action when the party suffered losses due to a breach of contract. *Johnson v. Bank of*

*America Corp.*, 2013 WL 664906, at *3 (W.D. Mich. Feb. 22, 2013). In other words, "the threshold inquiry is whether the plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's*, 559 N.W.2d at 658.

The Jones have not alleged any violations of a legal duty separate from the contractual obligations under the mortgage and promissory note. The Jones allege that after Defendant MERS bought the property at its own foreclosure sale, Defendant MERS wrongfully acted as an owner by paying tenants to vacate the premises, selling the furniture and appliances, changing the locks, and preventing the sale of the property to third parties. Compl. ¶ 9-18. All of these actions are the indirect result of the Jones' breach of the promissory note: when the Jones failed to make mortgage payments, Defendant MERS invoked its power of sale permitted by paragraph 22 of the promissory note. Defendant MERS then bought the property at the foreclosure sale and proceeded to assert ownership rights in the property. All of the Jones' alleged violations arise out of the breach of the promissory note, and the Jones may not maintain tort claims based on the breach of the promissory note.  The Jones' first objection is overruled.

**B**

The Jones' second objection states that the "Magistrate Judge made specific factual findings regarding Plaintiff's [sic] Tort claims" and "failed to construe the allegations in Plaintiff's [*sic*] Complaint regarding their Tort Claims in a light most favorable to Plaintiffs . . . ." Pl.'s Obj. 2.

Federal Rule of Civil Procedure 12(b)(6) authorizes this Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted . . . ." In deciding a motion to dismiss for failure to state a claim, the Court must treat all well-pleaded allegations in the complaint as true and draw all reasonable inferences from those allegations in favor of the nonmoving party.

*Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). "A claim survives this motion where its factual allegations are enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

As explained above, the Jones cannot maintain any of their tort claims because they have not alleged any violations of a legal duty separate from those arising under promissory note. Even taking all of the factual allegations in the Jones' Complaint as true, these factual allegations cannot support tort claims. The Jones claim that Defendants wrongfully foreclosed on their property and then wrongfully possessed and controlled the property. To reiterate, all of these claims arise out of the parties' contractual obligations under the promissory note. Assuming these allegations are true, the Jones cannot maintain their tort claims because their allegations all arise from duties under the promissory note. The Jones' second objection is overruled.

### C

Although the conclusion that the Jones' claims arise under contract law is sufficient to warrant dismissal, Judge Binder also considered the Jones' tort claims on the merits in the interest of justice. Judge Binder concluded that even if the Jones' claims were addressed on the merits, the Jones had failed to state a claim for relief.

The Jones' third objection concerns Judge Binder's conclusions regarding their tort claims under Michigan law. More specifically, the Jones object to Judge Binder's conclusion that they have not sufficiently alleged the necessary intent for tortious interference under Michigan law. The Jones claim that by specifically stating that the foreclosure was *void ab initio* and that

the foreclosure was "intentional" and "tortious", they have sufficiently alleged intent for both

tortious interference with business relationship and tortious interference with contract.

Under Michigan law, a plaintiff must establish the following elements to prevail on a

tortious interference with a business relationship claim:

> (1) The existence of a valid business relation (not necessarily evidenced by an
> enforceable contract) or expectancy; (2) knowledge of the relationship or
> expectancy on the part of the defendant interferer; (3) *an intentional interference*
> *inducing or causing a breach or termination of the relationship or expectancy*;
> and (4) resulting damage to the party whose relationship or expectancy has been
> disrupted.

*Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003) (emphasis

added). The third element requires more than just purposeful or knowing behavior on the part of

the defendant. *Id*.  The plaintiff must also allege that the interference was either (1) a *per se*

wrongful act or (2) a lawful act done "with malice and unjustified in law for the purpose of

invading the contractual rights or business relationship of another." *Id*. (quoting *Feldman v.*

*Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984)). "Where the defendant's actions were

motivated by legitimate business reasons, its actions would not constitute improper motive or

interference." *BPS Clinical Labs. V. Blue Cross and Blue Shield of Mich.* 552 N.W.2d 919, 925

(Mich. Ct. App. 1996).

The Jones have not alleged a claim for tortious interference with business relationship

because they have not alleged that the interference was either *per se* wrongful or done for the

purpose of invading the business relationship of another. The Jones' first claim, that the

foreclosure was *void ab initio*, does not survive the Michigan Supreme Court's holding in

*Residential Funding Co., L.L.C. v. Saurman.* 805 N.W.2d 183 (Mich. 2011). In *Saurman*, the

Michigan Supreme Court held that MERS is authorized to foreclose by advertisement under

Michigan law, and therefore a foreclosure by MERS is not *void ab initio*. *Id*. at 183. Because

Michigan law expressly permits MERS to foreclose by advertisement, the foreclosure of the Jones' property was not a *per se* wrongful act and cannot be used as the basis for inferring intent to interfere with a business relationship.

Nor have the Jones alleged that MERS's foreclosure was for the purpose of invading the business relationships with their tenants. The Jones do not deny that they failed to make the required mortgage payments, thereby violating the terms of the promissory note. The Jones' breach of the promissory note was legitimate reason to foreclose on the property, and therefore the foreclosure does not constitute improper intent. The Jones have not alleged sufficient intent to state a claim for tortious interference with business relationships.

Like tortious interference with business relationships, tortious interference with a contract requires "the intentional doing of a *per se* wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights" of another. *Knight Enterprises v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013). "If the defendant's conduct was not wrongful *per se*, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id.*

The Jones have not alleged a claim for tortious interference of contract with their tenants because they have not sufficiently alleged the required intent. First, as explained above, the foreclosure was not a *per se* wrongful act. Second, the Jones have not alleged any "specific, affirmative acts" that indicate that Defendants foreclosed the property for the purpose of invading the Jones' contractual rights. Instead, the Jones rely on generic descriptors, calling the foreclosure "intentional", "improper", and "tortious". These assertions are insufficient to survive a motion to dismiss. *See Giasson Aerospace Science, Inc. v. RCO Engineering, Inc.*, 2010 WL 360419, at *3 (E.D. Mich. Jan. 22, 2010) (dismissal pursuant to Rule 12(b)(6) appropriate

because the plaintiff "plead[ed] no specific facts allowing the conclusion that [defendants] acted with improper motive").

The Jones have not sufficiently alleged a claim for tortious interference with business relationships or contract, and therefore their third objection is overruled.

### III

Accordingly, it is **ORDERED** that Plaintiff's objections (ECF No. 13) are **OVERRULED** and the magistrate judge's report and recommendation (ECF No. 12) is **ADOPTED**.

It is further **ORDERED** that Defendants' motion to dismiss (ECF No. 5) is **GRANTED** and Plaintiffs' complaint is **DISMISSED** with prejudice.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 10, 2013

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 10, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS